The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Craig H.D. Armon presiding. Good afternoon, counsel. We'll call case number 4-22-0961, People of the State of Illinois v. Tanner Schofield. Would counsel for the appellant please state your name for the record? My name is Paige Straughan. I represent the appellant. Thank you. And counsel for the appellate, could you please state your name for the record? Matthew Goldman for the people. Thank you. Ms. Straughan, you may proceed. Thank you. May it please the court, counsel, I represent Tanner Schofield in a case that is actually pretty unique. I have raised the issue of reasonable doubt, which I'm going to just briefly lay out my arguments there as a backdrop for what the other, to make it easy for you to analyze the damage that occurred from the other errors raised in argument 2. This is a case of aggravated criminal sexual abuse. Tanner is a young man and is, you know, in his early 20s, and the complainant is a niece, A.W. What she alleged happened is that he had placed his hand down the back of her shorts while she was in the kitchen cooking a hash brown. Tanner, of course, at first denied that he had done that, but then ultimately admitted it had been an accident. He was trying to help her with the hash brown, and she was stepping back into a cabinet with a broken handle, and he stuck his hand out in order to block her getting there. There was absolutely no sexual intent, according to his testimony. And in an aggravated criminal sexual abuse case, what we have to show in order to convict him is that his conduct was committed for the purpose of sexual gratification. We don't have to have direct evidence. Of course, a jury can convict if someone doesn't admit that they had that intention. There can be inferences, and it's not a foreign concept that there are some acts that are so blatant or obvious that that inference kind of goes along with it. In this case, we just don't have those sort of facts. Here, there's never been any history at all of any sort of inappropriate contact. Even the complainant said, no, no, he'd never touched her in any inappropriate way ever. She, in fact, didn't seem to fully understand what had happened herself. He was asked by the police interviewer if he had had an erection when this was happening. He said, no. What we have is just an emptiness of evidence as to that intent element. Counsel, I want to get to the second argument in your brief where you are emphasizing how the trial court improperly admitted the testimony regarding how he had pinched her butt or stroked her butt earlier that day. You say it was improperly admitted pursuant to 115-7.3, and the trial court didn't conduct the appropriate analysis. But in this case, although things could have been more clear, didn't the state in its motion to admit the other crime's evidence mention that the incident involved that it was seeking to admit was admissible to show an defendant's intent to design coercive conduct and corroborate the victim's testimony? I believe that was the state's alley-oop there, maybe, an effort to save the argument. That was in its motion to admit in the trial court when it granted the motion after conducting a hearing, just added an order in which it said, I'm going to let this in. But then when we get to the instructions from the jury with regard to this, the jury received this instruction, which is, I think, IPI-314. Quote, evidence has been received that the defendant has been involved in an offense other than that charged in the information. This evidence has been received on the issue of the defendant's intent and lack of mistake and may be considered by you only for that limited purpose. Isn't that inconsistent with the statement about evidence being admitted under section 115-7.3? Inconsistent, maybe technically inconsistent, but the argument is, both arguments are based on the same underlying issue. Well, no, let me be more clear. In other words, it seems to me that the instruction given by the jury is inconsistent with and contrary to section 115-7.3. That's not what the jury is told if evidence is being admitted for propensity purpose. Isn't that correct? You're right. And I misunderstood your question to begin with. I apologize. Yeah, it is completely. Shouldn't the focus of this court be on what apparently, and again, things could have been clearer below, but this is real clear. Shouldn't the the question of intent or knowledge or the continuing narrative, so to speak, of the defendant and not under a claim that it shows a propensity to commit the crime? I think that when you phrase it that way, it's obvious that that's where it should focus. Yes, it does seem like that makes sense. I do think there's still a similarity there that underlies both of those positions, and that is that the underlying conduct has to be an offense of some nature. It has to be bad behavior, and it wasn't. And that, I think, would be true regardless if it was evaluated as other crimes evidence or ongoing absence of mistake of that nature. I think you still have to, at first, hit that threshold of whether this is the type of conduct that is contemplated by the statute at all, and it's not when there's no Well, if the statute doesn't apply to the admission of this evidence, we don't have to worry whether its conduct is contemplated by the statute. Instead, the analysis should be as a properly admitted as other crimes evidence for the common law exceptions. Should that be the analysis? I think that is certainly one way to look at it, and my argument would be that it is not, and it should not have been admitted as other crimes evidence because it is not a crime to begin with. There's no indication that it meets that first hurdle. Is there a requirement that it must be a crime? It doesn't have to be. It certainly doesn't have to be a charged crime, but much like the argument that there was no evidence of an intent that this conduct is done for the purpose of sexual gratification, we first have to get over the hurdle of it being any sort of conduct that is contemplated by the statute. Pausing right there. If the statute plays no role in this case, why do you keep referring to I think habit? Well, they are related, and the statute at least is based somewhat in common law, but in whichever direction you look at it, there has to be a threshold of conduct that fits into the idea that this is supposed to address, and it simply doesn't. What is described, first of all, not only did A.W. say that he had never touched her in an Then later on, it's like, oh, well, we did pinch my butt, or there's also some confusion and inconsistencies about whether there was a pinch or a pat or what it had been. What happened earlier that same day, didn't it? Yes, it did, but at the time the court was making its ruling, it didn't know that. Well, see, why does that matter to us on whether this was properly admitted? Because the fact that the court didn't have that information before it completely took away the ability to do the balancing test of probative value versus prejudicial effect. Well, certainly, you have that ability when it actually left the evidence in at trial. Well, I'm not sure I understand what you're asking. Well, at that point, it had heard all about how this is connected and heard about the earlier incident, and why when you say the court didn't have it connected, why didn't the court know about the earlier incident? Wasn't that the subject of the motion? Namely, he pinched or patted her butt earlier that same day? When they had the hearing on whether to admit that piece of information, the child had not given any information about when it had happened. No one knew if it had been that day, if it had been another year. No one knew, because she just didn't say that at all until trial. It wasn't made clear when this allegedly happened, and that is part of the problem. Without that information, there's no way for the court to properly balance to determine whether or not it should come in, or if it could be misused. In this case, is there any question but that your client at some point inserted his hands down the victim's pants on her backside? He acknowledged that his hand did slip down beneath her waistband behind. Yes, he did. His defense is it was inadvertent or a mistake and unintentional. Yes, and with no sexual intent at all. Now, what is the argument that had he patted her butt or pinched her butt a few hours earlier? What is the argument that that would have no relevance as to a jury's evaluation of its intent a few hours later when he claims it was inadvertent that he put his hand on her pants? Well, I think that there would be some relevance to it, but I think that the prejudicial effect is the larger problem here. What's the prejudicial effect? Well, if you think he if his argument is, I didn't mean to, it was an accident, I touched, it was an accident, she backed into my hand. It's not an unreasonable, ridiculous argument at all, especially when the child herself can't tell you exactly what happened. We don't really know, but if you throw in there was some other activity going on that by itself has no inappropriate content, it certainly makes it much more likely than not that perhaps he did have bad intent. Now, I would understand that would be... That sounds like a definition of probative evidence, doesn't it, counsel? Not to the point that it outweighs the prejudice in this case. And whose fault is that? Isn't that the trial judge's call initially? And had she had the all of the information that she needed at the time to make it and actually perform that balancing test, I would agree, absolutely. The problem is she didn't have that and she didn't, was unable to do the balancing test that had to be done, so no decision was ever made that this piece of information is more probative than it is prejudicial. If he pinched her butt or struck her butt and it happened a week before or a month before, as opposed to the very day, it loses its probative value? It certainly could lose some of it, absolutely. And taken alone, separate from any other allegations, would be considered exactly as the child explained it. I didn't think there was anything to it. I thought he was playing with me. Nothing that was so innately sexual or concerning. In fact, she didn't even really remember it. She denied he'd ever touched her. And then later on, she was like, oh, well, you did pinch my butt that. And then much later at trial said it was that day. I want to go to Montanez's statement, which you say was improper and it adversely affected your client's right to a fair trial. And in part, as I recall, the argument is that what he said could, in the eyes of the jury, serve to help the jury or raise the credibility of the victim in this case, A.W., because the credibility of all child sex victims was increased by Montanez's statement. Would that be a correct assessment of your position? It is a broad assessment, a broad assessment of my position. Well, the reason I point that out is this. Given that there's no dispute that your client put his hands down A.W.'s pants in the back, and given that the issue is, was it inadvertent or an accident as he claims or intentional as the state claims? A.W.'s credibility isn't at issue in this case, is it? It's only your client. Namely, since there's no dispute that the act occurred, and the question is, what was the intent or the knowledge of the defendant when he did it? That's where we'd have to look. But Montanez's statement, I don't see how it's prejudicial to you because A.W.'s credibility is an advantage. Is it? I think the complainant testifying, the credibility is always involved. Now, what did she testify to that your client disputed? Well, one thing that I would say that is most damaging is that he pinched her butt earlier in the day. Did he dispute that? Yeah, he did dispute that, and he said he didn't do that. Wait a minute. You've said a number of times this doesn't come up until trial. Six months before the trial, the interviewer from the Advocacy Network interviewed her, and she told that interviewer that he squeezed her butt that same day. That was known to everybody. It might not have been known to the judge, but it was known to everybody that she brought this up six months before we ever go to trial. It's not as if she thought of it on the day of trial and brought it up. I don't believe that she said when she spoke with the interviewer that it had happened that day. She wasn't clear about when it was. Well, the interviewer said that she said it then. Yes, the interviewer did say that. They also showed the video. Not only did the child say that she had told this person and told that person and told a third person, when we actually watched the video, that's not what had happened. So, that video itself tells us the most about it. But originally, the information was that she had never been touched by him at all, and then there was eventually a comment about, oh, yeah, he did either, I think he said, smacked her butt or pinched her butt. But there wasn't a timeframe on it at all until a later date. The more she talked, the more information that she provided, and that's when the information came out later. And I think that's where the problem lies. It is more probative, absolutely, the closer in time it is. It still needs to be some conduct that would support or impact the jury's opinion of it in order to even be admissible at all. The problem is that the judge didn't have that information to make the ruling after having done the balancing test that needed to be done. So, I think that's where the problem is. If the judge had heard that information earlier, and it was clear when the judge first ruled on the motion, you wouldn't be making a misargument? I wouldn't make the specific argument that the judge had been unable to perform a balancing test because she would have been better able to do so. But that's not what happened. Her comments on why she allowed the information in indicates that she might not even have been aware that she needed to do a balancing test. And I think that's the problem. It was just let in because. It certainly didn't meet any of the standards. Because what? I can't tell. I think maybe out of habit. It almost seemed as if it was a foregone conclusion. I mean, there was argument by his attorneys that this isn't even bad conduct, so how can you admit it as evidence of prior bad behavior because it's not even bad conduct? Completely ignored. It's an argument based upon 115-7.3, but I don't understand how it can be said to be not probative and prejudicial when the defense, the sole defense, as you conceded, is it was an accident or a mistake that I put my hands down the back of her pants, and yet earlier that same day, she's testifying that he stroked her rear end or pinched it or whatever. Seems to me that that speaks directly, the jury wants to believe it, as something that could affect the jury's assessment of his intent when he later put his hand down her pants. And I'm not saying there's no probative value. I'm saying that there's not enough probative value to outweigh the prejudicial effect because. The standard is, does the prejudicial effect substantially outweigh the probative value? Is that what you're claiming in this case? I am claiming that because other than adding in an additional incident, we have no evidence at all of the man's intent, other than he didn't mean to. He was horrified and humiliated. He didn't mean to, and there was no sexual intent there. The child's mother said she had no suspicions that he would ever do anything like that. The little girl couldn't even really see what he was doing, other than that she felt his hand, but didn't see anything else. I mean, there's a complete dearth of evidence about what the intent was, but if you throw in this second event, the prejudicial effect is right through the roof, and it should never have been presented in the first place because the probative value of a non-bad conduct. Wait a minute. I don't get where you say this is not bad conduct. An adult male pinching the ass of a 10-year-old female. What if that had happened in school? What if he was an adult visiting somebody else? I think it would have been a different situation. Absolutely. Why would it be a different situation? It's bad behavior. It's rude. It's bad behavior. I agree that it absolutely can be, but in this particular case, we're talking about a child and an uncle who are friendly with each other. Keep in mind, everybody is in the house while all of this is supposedly happening, and even the little girl didn't think anything of it. She didn't think anything of it. I can tell you what would have happened had it been my niece. I can certainly understand that. That is irrelevant to this, but I'm thinking that you're protesting too much that it's not bad behavior. I agree with you that it would probably never be charged, but I don't agree with you that it was discourteous. It was rude. It was disrespectful of the young lady's bodily behavior at that time. I don't think that you should be arguing that, but I do understand your point about prejudice and about intent because sometimes men are stupid. You've got an uncle who thinks somehow that's appropriate behavior or funny. I see that my time is up, so if your honors have no other questions, I'll stop talking. Thank you, counsel. You got your honors. Matthew Goldman for the people. I want to start with the argument that I think your honors spent the most time on, which was this prior instance where the defendant pinched the victim's buttocks. I think Justice Steigman hit the nail on the head when he was talking about how this goes towards the intent of the defendant. One of the things that defense counsel said when explaining the prejudice of this situation I think makes the answer to this question very clear. They said that the prejudice was that by showing this prior instance, the jury might think perhaps he did have bad intent. Well, that's exactly why it's probative. That's not a under these circumstances, the court was correct to view this as highly probative. The way that it would have been interpreted by the jury, especially with IPI 3.14 being read to the jury, means that they would have used it for that proper purpose. Let me ask a question. When did it come out that she either did or did not make reference to the pinching or grabbing her butt? Months before the trial, that's what the interviewer said. But Ms. Strawn says, well, if you look at the video, that really didn't come out at that point. Is there a dispute about that, or was this known to both sides based on discovery and what happened with the interviewer? Your honor, so I think that it is a bit of a confusing point, and on this particular point, I would agree with Ms. Strawn. She does bring it up during the interview. She says that she's essentially asked by the interviewer, is there anything else that's been done to you? I think it was something to the effect of like, that would make you uncomfortable. And at first she says, well, no. And then she says, wait, there was this instance where he pinched my butt. And she's not clear about the timeline at that point. Only at trial for the actual timeline come out. You answered my question, counsel. Counsel, can I maybe clarify one thing? We keep talking about pinching her butt. Actually, it wasn't the statement, no, well, he touched my butt. He grabbed it and he squeezed it for like a second. But then I thought, I just thought he was playing. Yes, your honor. Yeah. I think there's some relevance to that gesture versus pinching her butt. I agree. And I think throughout this case, it's important to recognize that the kinds of things that the defendant is alleged to have done, just describing his contact doesn't necessarily capture the full picture. For example, at trial, numerous times the court notes that there's a particular individuals who are testifying. These are things that show that there's a physical nature to this that may even sometimes the words that are used doesn't necessarily capture. But your honors, I would also argue that in relation to this prior contact, the way that the victim describes it is she's with her grandmother and her sister and the defendant on the couch watching TV. Her sister leaves with her grandmother to essentially go take a shower and her grandmother is going to sister because she's young. She's alone with the defendant. The defendant pinches or grabs her buttocks at that point. She then leaves, goes to prepare this hash brown. And then this the incident that actually is the evidence for this case comes about where he puts his hand down her shorts and her underwear. And this is all taking place while her sister's in the shower. So this isn't even a situation where it's hours beforehand. This is a situation where even if it's a very long shower, we're talking maybe 30 minutes, 45 at most, including undressing all things of that nature. So this happens in a very short period of time. It's all part of the same transaction, essentially. It's all part of the continuing narrative. And that's why I brought up in my brief the continuing narrative exception because these things are so intertwined with one another. It's the same place, the same people, the same location. And it all happens while she's alone with the defendant and essentially while the shower is taking place. So based upon all of that, I would argue that not only does this go to intent, but it's clearly admissible under the sufficiency of the evidence. I would agree that there's no direct evidence of the defendant's intent in that he didn't make any particular statement or there isn't a clear evidence of an erection like there is in some of these other cases. But I would argue that the strongest indication of the defendant's intent, in addition to the prior incident while they're on the couch, is the length of time that the defendant had his hand down her pants. Now, even his explanation that he was essentially trying to keep her from bumping into a broken handle, excuse me, in the kitchen, it doesn't make any sense in light of the time given by the victim. She says that his hand was in her pants for up to 60 seconds. Now, if we were in a jury trial, I'd be doing the one Mississippi, two Mississippi, three Mississippi until we got to 60 seconds. And by the end of that, it'd be very clear that the defendant, even if this was an accident, had no business having his hand down her pants that long. Any possible innocent explanation dissipates by the time you get to second five or six. He has his hand underneath her underwear and doesn't remove it for 60 seconds. Being the evidence of light most favorable to the state, they've clearly met their burden. The defendant can cannot come up with a plausible explanation for this because none of none exists. And what's more, he, after the fact, doesn't even come up with this story. He lies to everybody, including his parents and the police, in order to obfuscate what he did. Now, the jury is not required to ascribe an innocent explanation that the jury can to everybody, including his parents, is because he knew what he did was wrong. He knew what his intent was, and he knew that he would be in trouble for it, which is why he lied. And so, based upon the length of time and his lies after the fact that show his bad intent, we would argue that the state clearly presented sufficient evidence. Um, and your honor is moving to the third point. The motion for a mistrial that was properly denied. The court gave a curative instruction. Uh, the defense could have asked jurors if they were influenced by this witness or excuse me by this jurors comments. Uh, they didn't do so. There was no information that came out throughout throughout any part of the trial that any of these jurors were influenced by this one jurors comments. And under those circumstances, jurors are presumed to follow the curative instructions of the court. They were told to disregard it based upon this record. There's no reason to suspect that they failed to do so. Um, other than that, your honors, I would simply stand on the remainder for the remainder on my brief and asked of this court, uh, from the judgment of the trial court. Thank you. Council strong. You'd be proceeding. I think the only point that I would like to follow up on is when you listen to or when you read the child's testimony about timing, how long his hand was there, um, what it was actually doing. It's, it's a little bit all over the place. Uh, yeah, there were times when she said it could have been up to a minute. There were other times when she said it wasn't that long. He said it probably wasn't that long. I think that we're dealing with a child and we're dealing with a young adult who is awkward, uncomfortable. You can see that in his videos. He's certainly not a sophisticated sort of filler. I think it is important to recognize that none of these acts that are alleged, either the charge defense or the other, um, crimes evidence are of the nature that are so blatantly, obviously for the purpose of sexual gratification, none of them are. And that's why it is so important that there not be any improper influence, any improper evidence, because it is so very closely balanced because really it comes down to what is in his mind. What is he actually doing? And what is our evidence that there was something terrible in his mind that would allow the jury to infer this was done for sexual gratification? You gotta look at what the child said. Mr. Goldman says we can infer that in part based on the fact that he lied to all these people. If it was an innocent explanation, he would have given it when first questioned about it. And instead he lied to various people about what happened or anything happened at all. Why is that not a proper inference? I think that you can, you may be able to infer something from that. His explanation combined with his particular circumstances, I think, um, kind of cuts against that a little bit. What do you mean by his particular circumstances? Well, you can see from the video that he is not, um, sophisticated by any stretch. He struggles a bit with communication. He explained how hard it is for him to say, to get the right words, to say things. And you can see that throughout the video. I mean, this isn't a polished kid by any stretch. I understand, but it doesn't take a genius to say it was a mistake. And he did say that after he, after he initially denied it and then explained that he was denying him because he was. That's my, that's kind of my point. Yes. The failure to initially come out and say it was a mistake, it was an accident with, with then after a period of time changing to an explanation. Why is that not a proper inference? I think that you can infer something from it. I don't think it is enough in light of the absence of anything else. He also explained that he said that because he was just so horribly embarrassed and kind of shell-shocked at himself. The other types of evidence you would normally see to support these inferences are a threat to the child. Don't tell anyone. That didn't happen. He didn't make promises or bribe her if she would stay quiet. That didn't happen. Those are the sorts of things that we see in these kind of cases that make you realize, yeah, that's dirty bird behavior. None of that happened here. He's just an awkward dude, really, really awkward. And he didn't communicate effectively. And so I think maybe him being initially denying is different than if I had initially denied. I don't think they carry the necessarily the same weight or the same meaning. And in light of her confusion and discrepancies about what may or may not have happened, specifically, and not to be indelicate, but she's frequently referring to her butthole. She sometimes says she doesn't know if that happened or didn't happen. Those are important factors because the nature of the act, if in fact he did touch her butthole with his finger, is completely different than if his hand just happened to be on her hiney. It's a completely different deal. And she's not consistent, doesn't really know herself. And with that shaky of a foundation, these other issues become much more important. If the evidence was not closely balanced, I don't think that I'd be making such an argument. But what we have got here is no evidence of intent, really, no direct evidence of intent, reasonable, plausible, other possibilities. And in light of that, the errors are more significant than they would be in perhaps another case. There's not another published case in this state that finds proper inference from this evidence. They are all much more extreme. And I think that this case should be compared to those to see if that is appropriate. And our argument is that it's not. So we also believe that not only were the errors prejudicial, such that he should need a new trial, the fact is they can't prove intent. They didn't this time, and it should be vacated outright. All right. Thank you, counsel. We appreciate your arguments. The court will take this matter under advisement. The court stands in recess.